2010 JAN 20 PH 3: 30

FILED

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2009 Grand Jury

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR No. 09-1344(A)-VBF |
| Plaintiff, | ) ) ) | **F I R S T** |
| v. | ) ) | **S U P E R S E D I N G** **I N D I C T M E N T** |
| JIRAIR AVANESSIAN, | ) ) | [18 U.S.C. § 371: Conspiracy; 50 |
| aka "Jerry Avanessian," | ) | U.S.C. §§ 1701-1706: |
| aka "Jerry Avanes," and | ) | International Emergency Economic |
| FARHAD MASOUMIAN, | ) | Powers Act; 18 U.S.C. § 554: |
| aka "Farhad Ma'sumiyan," | ) | Smuggling Goods from the United |
| aka "Farhad Ma'sumian," | ) | States; 18 U.S.C. 1956(h), |
| aka "Farhad Masouiman," | ) | (a)(2)(A): Conspiracy to Launder |
| aka "Farhad Masumian," | ) | Money; 18 U.S.C. 1956(a)(2)(A): |
| aka "Farhad Masumiyan," | ) | Money Laundering; 18 U.S.C. |
| AMIRHOSSEIN SAIRAFI, | ) | § 2(a),(b): Aiding and Abetting |
| aka "Amir Hossein Sairafi,") | | and Causing an Act to be Done; |
| Defendants. | ) ) | 18 U.S.C. § 982(a)(1): Criminal Forfeiture] |

The Grand Jury charges:

<u>Introductory Allegations</u>

At all times relevant to this Indictment:

<u>Defendants and Entities</u>

1.    Defendant JIRAIR AVANESSIAN also known as ("aka")

"Jerry Avanessian," aka "Jerry Avanes" ("defendant AVANESSIAN"),

a lawful permanent resident residing in Glendale, California,

with a degree in chemical sciences, was the owner and operator of XVAC, a company located in Glendale, California, with a business address in Tehran, Iran.  Defendant AVANESSIAN also did business as Grande Vitesse Systems South (aka GVS-South) with the same business address as XVAC in Glendale, California, as GVS, Inc. with a business address in San Francisco, California, and as S. Garny, with a business address in Tehran, Iran.

2.   Defendant FARHAD MASOUMIAN aka "Farhad Ma'sumiyan," aka "Farhad Ma'sumian," aka "Farhad Masouiman," aka "Farhad Masumian," aka "Farhad Masumiyan" ("defendant MASOUMIAN"), was present in Iran and other foreign countries when conspiring by e-mail with defendants AVANESSIAN and SAIRAFI as set forth below.

3.   Defendant AMIRHOSSEIN SAIRAFI ("defendant SAIRAFI"), was present in Iran and other foreign countries when conspiring by e-mail with defendants AVANESSIAN and MASOUMIAN as set forth below.

4.   AVAC was a company located in Dubai, United Arab Emirates ("U.A.E."), operated by defendant SAIRAFI.

5.   Total Transportation Concepts was a freight forwarder located in Los Angeles, California.

6.   Cargo Speedline Inc. was a freight consolidating company located in Glendale, California.

7.   Pfeiffer Vacuum, Edwards Vacuum, Inc., Oerlikon Leybold Vacuum, Duniway Stockroom, PTB Sales, Inc., and LDS Vacuum Products, Inc., were companies that manufactured and/or supplied vacuum pumps and related parts and are either headquartered in the United States or operate a United States subsidiary.

2

1 | <u>International Emergency Economic Powers Act</u>

2 |     8.   Under the International Emergency Economic Powers Act

3 | ("IEEPA"), Title 50, United States Code, Sections 1701-1706, the

4 | President of the United States has been granted the authority to

5 | deal with unusual and extraordinary threats to the national

6 | security, foreign policy, or economy of the United States, where

7 | such an unusual and extraordinary threat has its source in whole,

8 | or in substantial part, outside the United States.

9 | <u>The Iranian Transactions Regulations</u>

10 |     9.   On March 15, 1995, the President of the United States

11 | issued Executive Order No. 12957, finding that "the actions and

12 | policies of the Government of Iran constitute an unusual and

13 | extraordinary threat to the national security, foreign policy,

14 | and economy of the United States" and declaring "a national

15 | emergency to deal with that threat."  Executive Order No. 12957,

16 | as expanded and continued by Executive Orders No. 12959 and 13059

17 | and Presidential Notice of March 10, 2004, was in effect at all

18 | times relevant to this First Superseding Indictment.

19 |     10.  On May 6, 1995, the President of the United States

20 | issued Executive Order No. 12959 and imposed economic sanctions,

21 | including trade restrictions, against Iran.  The Executive Order

22 | prohibits, among other things, the exportation, re-exportation,

23 | sale, or supply, directly or indirectly, to Iran of any goods,

24 | technology, or services from the United States or by a United

25 | States person.  The Executive Order also prohibits any

26 | transaction within the United States or by any United States

27 | person that evades or avoids, or has the purpose of evading or

28 | avoiding, any prohibition on trade with Iran.  On August 17,

1997, the President issued Executive Order No. 13059, reiterating and renewing the previous trade restrictions, which continued and was in effect at all times relevant to this First Superseding Indictment.

<u>Office of Foreign Assets Control</u>

11.   To implement the restrictions on trade with Iran contained in the Executive Orders, the United States Department of the Treasury, through the Office of Foreign Assets Control ("OFAC"), issued the Iranian Transactions Regulations ("ITR") (31 C.F.R. Part 560).  The ITR prohibit, among other things, the export, re-export, sale, or supply, directly or indirectly, from the United States or by a United States person wherever located, to Iran or the Government of Iran, or the financing of such export, re-export, sale, or supply, of any goods, technology, or services, without prior authorization from the Secretary of the Treasury.  These regulations further prohibit any transactions that evade or avoid or have the purpose of evading or avoiding any of the prohibitions contained in the ITR, including the unauthorized exportation of goods from the United States to a third country if the goods are intended or destined for Iran.

12.   The term "United States person" as used in the ITR included any United States citizen or permanent resident alien and any person in the United States.

13.   Vacuum pumps and vacuum-pump-related equipment were goods and technology subject to the ITR, and accordingly such items could not be exported or transshipped to Iran by a United States person without first obtaining authorization from OFAC.

14.   At no time did defendants AVANESSIAN, MASOUMIAN, or SAIRAFI apply for, receive, or possess a license or authorization from OFAC to export goods, technology, or services, of any description to Iran, nor did AVAC or XVAC.

15.   The Executive Orders described above, the ITR, and IEEPA were in effect at all times relevant to this First Superseding Indictment.

16.   The Grand Jury incorporates by reference and realleges these Introductory Allegations into each and every count of this First Superseding Indictment as though fully alleged therein.

1  COUNT ONE

2  (18 U.S.C. § 371)

3  A.  OBJECT OF THE CONSPIRACY

4  17.  Beginning at least as early as in or about June 2005

5  and continuing to in or about January 2010, in Los Angeles

6  County, within the Central District of California, and elsewhere,

7  defendants JIRAIR AVANESSIAN ("defendant AVANESSIAN"), FARHAD

8  MASOUMIAN ("defendant MASOUMIAN"), and AMIRHOSSEIN SAIRAFI

9  ("defendant SAIRAFI"), and others known and unknown to the Grand

10  Jury, conspired and agreed with each other to knowingly and

11  intentionally commit an offense against the United States,

12  namely, to export, attempt to export, and cause the export of

13  vacuum pump and pump-related equipment from the United States,

14  via a third country, to a country on which the United States had

15  imposed trade restrictions, namely, Iran, without first having

16  obtained from the United States Department of Treasury, Office of

17  Foreign Assets Control, authorization for such export, in

18  violation of IEEPA, 50 U.S.C. §§ 1701-1706, and the Iranian

19  Transaction Regulations, 31 C.F.R. §§ 560.203, 560.204, 560.701.

20  B.  MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE

21  ACCOMPLISHED

22  18.  The object of the conspiracy was to be accomplished in

23  substance as follows:

24  19.  Defendant AVANESSIAN would receive, from co-

25  conspirators known and unknown to the Grand Jury, including

26  defendant MASOUMIAN and defendant SAIRAFI acting through

27  defendant MASOUMIAN, requests to obtain price quotations for

28

6

1  goods and technology sought by companies and persons in Iran, and

2  requests to purchase such goods and technology for companies and

3  persons in Iran.

4      20.  Defendant AVANESSIAN would obtain price quotations and

5  purchase the desired goods and technology pursuant to the orders.

6      21.  Defendant AVANESSIAN would arrange to ship the goods

7  and technology to defendant SAIRAFI at AVAC in the U.A.E., making

8  it appear that the ultimate destination of the goods and

9  technology was the U.A.E., with defendants AVANESSIAN, MASOUMIAN,

10  and SAIRAFI knowing that the goods and technology ultimately were

11  being sent to Iran.

12      22.  Defendant AVANESSIAN would falsely undervalue the

13  shipments to the U.A.E. to reflect a value under $2,500 to avoid

14  the filing requirements of a Shipper's Export Declaration.

15      23.  Defendants AVANESSIAN, MASOUMIAN, and SAIRAFI would re-

16  label the contents of shipments to the U.A.E. to mask the true

17  contents in order to avoid detection or interception by U.S.

18  Customs and Border Protection.

19      24.  Defendants MASOUMIAN and SAIRAFI would arrange for the

20  goods and technology to be transshipped from the U.A.E. to

21  customers in Iran.

22      25.  Defendant AVANESSIAN would receive payment for the

23  goods and technology from defendant MASOUMIAN and others through

24  international money transfers and other means.

25      26.  At other times, defendant SAIRAFI would contact

26  companies in the United States directly and seek price quotations

27  and would ultimately purchase parts that he would cause to be

28  exported from the United States to AVAC in the U.A.E.  From there

1  defendant SAIRAFI would forward those parts to Iran.  Defendant

2  SAIRAFI would pay for the purchase of those parts through

3  international money transfers and other means.

4      27.  Defendants AVANESSIAN, MASOUMIAN, and SAIRAFI would

5  knowingly fail to apply for a license to ship the goods and

6  technology to Iran, despite knowing that export of the goods and

7  technology to Iran without such a license was prohibited by law.

8  C.   OVERT ACTS

9      28.  On or about the dates listed below, in furtherance of

10 the conspiracy and to accomplish the object of the conspiracy,

11 defendants AVANESSIAN, MASOUMIAN, and SAIRAFI, and others known

12 and unknown to the Grand Jury, committed various overt acts

13 within the Central District of California and elsewhere,

14 including but not limited to the following:

15     June 19, 2006 Shipment

16     Overt Act #1:  On March 28, 2006, defendant SAIRAFI sent an

17 e-mail to defendant MASOUMIAN forwarding a quotation from PTB

18 Sales in response to defendant SAIRAFI's request for the

19 following items:

| Quantity | Description | Listed Unit Price |
|---|---|---|
| 1 | PMC-6 oil diffusion pump | 1200 |
| 1 | VHS-6 oil diffusion pump | 1800 |
| 1 | D90A Leybold 2 stage rotary vane pump (with 90-day gar.) | 2781 |
| 2 | Varian Al valve H/O KF 25 model L6280302 | 150 each |
| 2 | MDC KF-40 valve model KAV-15-P | 160 each |
| 2 | VAT KF-15 Al valve, A/O model 26324-KA21 | 120 each |

Overt Act #2:  On March 29, 2006, defendant MASOUMIAN sent an e-mail to defendant SAIRAFI asking him to "ask ptb" for substitutions for certain of the parts that PTB did not have in stock as follows, specifically, a "VHS-4 oil diffusion pump, rebuilt, 1 year warranty (1600 US$) instead of PMC 6 oil diffusion pump (Qty. 1)," and any other H/O aluminum or stainless steel KF 25 valve available, and any other A/O aluminum or stainless steel KF 40 valve available.  Defendant MASOUMIAN wrote "Please ask for an early reply so that we can buy the above items (if available) along with the available items confirmed."

Overt Act #3:  On June 15, 2006, defendant SAIRAFI transferred and caused to be transferred approximately $6,258 from the U.A.E., via Lari Money Exchange Establishment in the U.A.E., to Wells Fargo Bank N.A., in the United States, account number ending in 4416, an account in the name of PTB Sales, Inc.

Overt Act #4:  On June 19, 2006, defendant SAIRAFI, doing business as AVAC, caused a Varian diffusion pump model VHS-6 with standard cold cap 120 V, ASA Flange S/N J5266; a Leybold D90A rotary vane mechanical pump, hydrocarbon prep, 220v 3 phase S/N 898058; a VAT gate valve model 12040-PA44 ISO 100 S/N 1292; and five VAT KF-16 AL Valves A/O Model 26324-KA21 single acting NC w/ LM without SV S/N 1635, 1730/1561/1681/2139, among other items, to be exported to U.A.E.

October 11, 2006 Shipment

Overt Act #5:  On September 29, 2006, defendant SAIRAFI, doing business as AVAC, transferred and caused to be transferred approximately $5,965 from the U.A.E., via Redha Al-Ansari Exchange Est. in the U.A.E., to Wells Fargo Bank N.A., in the

1  United States, account number ending in 4416, an account in the

2  name of PTB Sales, Inc.

3       Overt Act #6:  On October 11, 2006, defendant SAIRAFI, doing

4  business as AVAC, caused a Varian diffusion pump model M4 with

5  standard cold cap, 220 V, ASA Flange, S/N:A056; a Varian

6  diffusion pump model HS-2 with standard cold cap, 220 V, ASA

7  Flange, S/N:L0C10050; a Leybold D16A rotary vane mechanical pump,

8  hydrocarbon prep, 220v, 1 phase; two VAT AL angle valves KF-40,

9  air operated, 26332-KA71, S/N:2137,2148; and three VAT KF-16 AL

10 Valve A/O Model 26324-KA21, single acting NC w/ LM without SV,

11 1986, 160, 168, to be exported to the U.A.E.

12      November 8, 2006 Shipment

13      Overt Act #7:  On November 8, 2006, defendant SAIRAFI, doing

14 business as AVAC, caused a Varian diffusion pump model VHS-250

15 with standard cold cap, 220 V, ASA flange, S/N:9G065; a Leybold

16 D90A rotary vane mechanical pump, hydrocarbon prep. 220v, 3 phase

17 S/N 1288454761E; and a Varian Diffusion Pump Model VHS-6 with

18 standard cold cap, 220 V, ASA Flange S/N:D044, to be exported to

19 the U.A.E.

20      Overt Act #8:  On November 6, 2006, defendant SAIRAFI, doing

21 business as AVAC, transferred and caused to be transferred

22 approximately $6,045 from the U.A.E., via Redha Al-Ansari

23 Exchange Est. in the U.A.E., to Wells Fargo Bank N.A., in the

24 United States, account number ending in 4416, an account in the

25 name of PTB Sales, Inc.

26      Overt Act #9:  On January 17, 2007, defendant SAIRAFI sent

27 an e-mail to a representative of PTB Sales in which he wrote that

28 "the D90A pump which we received last time" did not have the cap

1  for a gas ballast valve, and requested that it be put in an

2  upcoming shipment.

3      February 5, 2007 Shipment

4      Overt Act #10:  On January 17, 2007, defendant SAIRAFI

5  responded to an e-mail sent from a representative of PTB Sales

6  who asked about the status of payment by writing in an e-mail

7  that he "will arrange for next week to transfer."

8      Overt Act #11:  On January 25, 2007, defendant SAIRAFI,

9  doing business as AVAC, transferred and caused to be transferred

10  approximately $3,610 from the U.A.E., via Lari Money Exchange

11  Establishment in the U.A.E., to Wells Fargo Bank N.A., in the

12  United States, account number ending in 4416, an account in the

13  name of PTB Sales, Inc.

14      Overt Act #12:  On January 27, 2007, defendant SAIRAFI sent

15  an e-mail to a representative of PTB Sales in which he wrote

16  "3600 USD is transferred to your account last week" and asked for

17  the representative to notify defendant SAIRAFI of the shipping

18  details so that he could ask his "forwarder to arrange pick it up

19  and ship to me."

20      Overt Act #13:  On February 5, 2007, defendant SAIRAFI,

21  doing business as AVAC, caused two Varian diffusion pumps model

22  VHS-250 with standard cold cap 220 V, ASA Flange, S/N:A136,T039,

23  to be exported to the U.A.E.

24      December 6, 2007 Shipment

25      Overt Act #14:  On January 10, 2007, defendant MASOUMIAN

26  sent an e-mail to defendant AVANESSIAN discussing information for

27  a Pfeiffer Vacuum turbo station DN 63 ISO-K flange with a price

28  of "4950$."

1     <u>Overt Act #15</u>:  On January 22, 2007, defendant MASOUMIAN

2 sent an e-mail to defendant AVANESSIAN asking for a quote on a

3 Pfeiffer Vacuum compact PKR 251 gauge (part number PT R26000) and

4 sensor cable (part number PT 448 250-T).

5     <u>Overt Act #16</u>:  On March 24, 2007, defendant MASOUMIAN sent

6 an e-mail to defendant AVANESSIAN asking for quotes on items from

7 Pfeiffer Vacuum and another vacuum pump company, including a

8 quote for a Pfeiffer Vacuum EVN 116 Gas dosing valve.

9     <u>Overt Act #17</u>:  On June 13, 2007, defendant AVANESSIAN sent

10 an e-mail to defendant MASOUMIAN providing a quote for the

11 following Pfeiffer Vacuum items: (1) Turbo pumping station, (2)

12 PKR 251 compact full range gauge, and (3) EVN 116 gas dosing

13 valve, among other items.

14     <u>Overt Act #18</u>:  On October 9, 2007, defendant MASOUMIAN

15 transferred and caused to be transferred approximately $39,996.66

16 from an entity in the U.A.E., via National Bank of Dubai in the

17 U.A.E., to Washington Mutual Bank in the United States, account

18 number ending in 6401, a joint account in defendant AVANESSIAN's

19 name.

20     <u>Overt Act #19</u>:  On October 11, 2007, GVS, Inc. sent a

21 purchase order to Pfeiffer Vacuum for various items to be shipped

22 to GVS-South in Glendale, California, including the following

23 items:

| Quantity | Description | Unit Price |
|---|---|---|
| 4 | Economy Pumping Station inlet flange DN 63 ISO-K | $4,950.00 |
| 2 | PKR 251 Compact FullRange Pirani/Cold Cathode Gauge PTR26 000 | $900.20 |
| 1 | Measurement Cable, Compact Gauge/TPG PT 448 250-T | $72.80 |
| 1 | EVN 116 gas dosing valve with integrated shut-off valve | $969.75 |

Overt Act #20: On December 4, 2007, defendant AVANESSIAN caused Total Transportation Concepts to prepare an air waybill indicating that the shipment contained "spare parts" and was being sent to AVAC in the U.A.E., and that no Shipper's Export Declaration was required because the commodity value was under $2,500. Among the items listed on the XVAC invoice submitted to Total Transportation Concepts for this shipment were the following:

| Quantity | Description | Listed Unit Price |
|---|---|---|
| 4 | Pfeiffer Air Pump Packages DN-63 | $275.00 |
| 2 | Pfeiffer gauges PTR26000 | $74.00 |
| 2 | Pfeiffer gauge cable PT 448-250-T | $40.00 |
| 1 | EVN 116 valve with shut-off system | $80.00 |

Overt Act #21: On December 6, 2007, defendant AVANESSIAN, doing business as XVAC, caused Pfeiffer Vacuum turbo pumping stations DN 63 ISO-K; compact PKR 251 gauges (part number PT R26000); measurement cable; and an EVN 116 gas dosing valve, among other items, to be exported to the U.A.E.

13

March 28, 2008 Shipment

Overt Act #22:   On January 14, 2008, defendant AVANESSIAN sent defendant MASOUMIAN an e-mail attaching a quote for Edwards Vacuum parts, including a quote for six "Speedivalve with Viton diaphrag SP25K" with a unit price of $209.00.

Overt Act #23:   On March 12, 2008, defendant MASOUMIAN transferred and caused to be transferred approximately $74,981.58 from an entity in the U.A.E., via National Bank of Dubai in the U.A.E., to Washington Mutual Bank in the United States, account number ending in 6401, a joint account in defendant AVANESSIAN's name.

Overt Act #24:   On March 26, 2008, defendant AVANESSIAN sent an e-mail to defendant MASOUMIAN attaching a packing slip for a blower pump system and an XVAC invoice for eight boxes.  Among the items listed on the XVAC invoice were six "SP25K Speedivalve Pneumatic Angle Valves" with a listed unit price of $15.00, a "DIP-8000 dif pump system" with a listed unit price of $230.00, a "CUP 63x 110 ACRYL-01B2 E49013105" with a listed unit price of $10.00, and a "Pump controller connecting line NT 20" with a listed unit price of $11.00.

Overt Act #25:   On March 28, 2008, defendant AVANESSIAN sent an e-mail to defendant MASOUMIAN stating that the original invoice and packing slip were in box number eight and that defendant AVANESSIAN would forward the shipment's air waybill as soon as he received it.

Overt Act #26:   On March 28, 2008, defendant AVANESSIAN sent another e-mail to defendant MASOUMIAN, informing defendant

14

MASOUMIAN that he was attaching the eight-box air waybill for defendant MASOUMIAN's Dubai shipment.

Overt Act #27:  On March 28, 2008, defendant AVANESSIAN caused Total Transportation Concepts to prepare an air waybill for eight crates indicating that the shipment contained "spare parts" and was being sent to AVAC in the U.A.E., and that no Shipper's Export Declaration was required because the commodity value was under $2,500.  Among the items listed on the XVAC invoice submitted to Total Transportation Concepts for this shipment were the following:

| Quantity | Description | Listed Unit Price |
|---|---|---|
| 6 | SP25K Speedivalve Pneumatic Angle Valves | $15.00 |
| 1 | DIP-8000 dif pump system | $230.00 |
| 3 | Pump controller connecting line NT 20 | $11.00 |
| 1 | CUP 63x 110 ACRYL-01B2 E49013105 | $10.00 |

Overt Act #28:  On March 28, 2008, defendant AVANESSIAN, doing business as XVAC, caused the export of Edwards Vacuum Speedivalve Pneumatic Angle Valves; Leybold DIP-8000 Diffusion Pump; Leybold pump controller connecting line NT 20; and Leybold cup 63X 110 ACRYL-01B2 E49013105, among other items, to the U.A.E.

May 23, 2008 Shipment

Overt Act #29:  On March 25, 2008, defendant AVANESSIAN sent an e-mail to defendant MASOUMIAN forwarding a quote from Duniway Stockroom for the following items:

15

| Quantity | Description | Unit Price |
| --- | --- | --- |
| 5 | TERRA-921 Terranova Cold Cathode gauge controllers | $750.00 |
| 5 | IMAG-KF25 I-MAG Cold cathode sensors | $374.00 |
| 5 | IMAG-CBL = 10ft' Cable, HPS IMAG sensor to Terra-921 controller | $140.00 |

Overt Act #30:  On March 26, 2008, defendant MASOUMIAN responded to defendant AVANESSIAN's March 26, 2008 e-mail by asking defendant AVANESSIAN to double the Duniway order.

Overt Act #31:  On May 9, 2008, defendant AVANESSIAN, doing business as XVAC, placed an order with LDS Vacuum Products for various items, including the following:

| Quantity | Description | Unit Price |
| --- | --- | --- |
| 300 | ISO63/250-DC-S S/S Double Claw | $6.00 |
| 50 | ISO320/500-DC-S - SS Double Claw | $14.00 |
| 100 | NW 50-200-CW - NW 50 Wing-Nut Clamp | $4.95 |

Overt Act #32:  On May 16, 2008, defendant MASOUMIAN transferred and caused to be transferred approximately $89,944.00 from an entity located in Sweden, via Swedbank in Sweden, to Washington Mutual Bank in the United States, account number ending in 6401, a joint account in defendant AVANESSIAN's name.

Overt Act #33:  On May 19, 2008, defendant AVANESSIAN sent an e-mail to defendant MASOUMIAN attaching a packing slip and invoice for a nine-box shipment to be picked up on "05/19/05," that included all "Donneway" items.

Overt Act #34:  On May 23, 2008, defendant AVANESSIAN caused Total Transportation Concepts to prepare an air waybill for nine

16

boxes shipped as three packages indicating that the shipment contained "spare parts" and was being sent to AVAC in the U.A.E., and that no Shipper's Export Declaration was required because the commodity value was under $2,500. Among the items listed on the XVAC invoice submitted to Total Transportation Concepts for this shipment were the following:

| Quantity | Description | Unit Price |
|----------|-------------|------------|
| 1 Unit | Air Pump Model TUR-361 160:ISO-K P/N 85672 | $178.00 |
| 1 Unit | Air Pump Model TUR-361 160:ISO-K P/N 85672 | $178.00 |
| 10 sets | Terr 921 with IMG-KF25 Sensor and Cables and Manual | $65.00 |
| 3 packs | ISO63/250-DC-S Double Claw Clamp | $25.00 |
| 1 pack | ISO320/500-DC-S Double Claw Clamps | $28.00 |
| 3 packs | NW50-200-CW, Wing Nut Clamp | $20.00 |

Overt Act #35: On May 23, 2008, defendant AVANESSIAN, doing business as XVAC, caused the export of TURBOVAC 361, 160 ISO-K Vacuum Turbo Molecular pumps; Oerlikon Leybold Catalog No. 85762; Duniway TERRA-921 Terranova Cold Cathode gauge controllers; ISO63/250-DC-S Double Claw Clamp; ISO320/500-DC-S Double Claw Clamps; and NW50-200-CW Wing Nut Clamp, among other items, to the U.A.E.

June 20, 2008 Shipment

Overt Act #36: On March 7, 2008, defendant AVANESSIAN sent an e-mail to a representative of Oerlikon Leybold asking for a quotation for a "TURBOVAC MAG turbo molecular pump W 3200 CT, Part No.: 400003V002  Qty.: 4 sets," among other items.

1   Overt Act #37:  On April 29, 2008, defendant AVANESSIAN,

2   doing business as XVAC, sent a purchase order to Oerlikon Leybold

3   for a "400003V002 MAG W 3200 CT; 320 ISO-F," among other items,

4   with payment to be made by a credit card in the name of defendant

5   AVANESSIAN.

6       Overt Act #38:  On June 20, 2008, defendant AVANESSIAN

7   caused Total Transportation Concepts to prepare an air waybill

8   for three boxes indicating that the shipment contained "spare

9   parts" and was being sent to AVAC in the U.A.E., and that no

10  Shipper's Export Declaration was required because the commodity

11  value was under $2,500.  Among the items listed on the XVAC

12  invoice submitted to Total Transportation Concepts for this

13  shipment were two "Air pump Model W 3200 CT" with a listed unit

14  price of $430.00 each, and an "Air pump Model 556-H S/N 89672,"

15  with a listed price of $260.

16      Overt Act #39:  On June 20, 2008, defendant AVANESSIAN,

17  doing business as XVAC, caused the export of two Oerlikon Leybold

18  turbomolecular pumps model MAG W 3200 CT, 320 ISO-F; and an

19  Edwards turbomolecular pump EXT556 H DN160ISO, among other items,

20  to the U.A.E.

21      July 11, 2008 Shipment

22      Overt Act #40:  On March 6, 2008, defendant AVANESSIAN sent

23  an e-mail to defendant MASOUMIAN that referenced a prior request

24  by defendant MASOUMIAN to order from Leybold, among other items,

25  a "Screw Vacuum Pump ScrewLine SP630" with a "Cat. Nr.: 117008."

26      Overt Act #41:  On July 11, 2008, defendant AVANESSIAN

27  caused Total Transportation Concepts to prepare an air waybill

28  for six boxes indicating that the shipment contained "spare

1  parts" and was being sent to AVAC in the U.A.E., and that no

2  Shipper's Export Declaration was required because the commodity

3  value was under $2,500.  Among the items listed on the XVAC

4  invoice submitted to Total Transportation Concepts for this

5  shipment was a "Screw Pump Model SP 630" with a listed unit price

6  of $510.00.

7      <u>Overt Act #42</u>:  On July 11, 2008, defendant AVANESSIAN,

8  doing business as XVAC, caused the export of Leybold Screw Vacuum

9  Pump Screwline SP 630, among other items, to the U.A.E.

10      <u>August 27, 2008 Shipment</u>

11      <u>Overt Act #43</u>:  On March 6, 2008, defendant AVANESSIAN sent

12  an e-mail to defendant MASOUMIAN that referenced a prior request

13  by defendant MASOUMIAN to order from Leybold, among other items,

14  an "Electronic frequency converter MAG.DRIVE digital with RS-232,

15  Part No. 400035V0013."

16      <u>Overt Act #44</u>:  On July 16, 2008, defendant AVANESSIAN

17  forwarded to defendant MASOUMIAN a quote from Duniway Stockroom

18  Company prices on four different types of copper gaskets.

19      <u>Overt Act #45</u>:  Defendant MASOUMIAN responded on July 16,

20  2008, asking defendant AVANESSIAN to order these Duniway items as

21  soon as possible so that the parts could be sent along with other

22  items in the near future.

23      <u>Overt Act #46</u>:  On August 5, 2008, defendant AVANESSIAN sent

24  an e-mail to defendant MASOUMIAN with a subject line reading

25  "Items lest [sic] which will be ready to ship" and including one

26  set of a "Leybold Turbo controller" in the list.

27      <u>Overt Act #47</u>:  On August 6, 2008, defendant SAIRAFI sent an

28  e-mail to defendant MASOUMIAN itemizing the contents of four

1  packages, and the list of items contained a description followed

2  by a description in parentheses, for example "copper gaskets" was

3  followed by "(copper rings)," "coating material and mo boat" was

4  followed by "(consumable materials for electrolysis)," and a

5  "Leybold Turbo controller" was followed by "(Temperature

6  controller)."

7       Overt Act #48:  On August 6, 2008, defendant MASOUMIAN sent

8  an e-mail to defendant AVANESSIAN in which he used verbatim

9  portions of the e-mail defendant SAIRAFI had sent to him the same

10 day, and directed defendant AVANESSIAN to change the description

11 of the items to be shipped, including changing the description of

12 "copper gaskets" to "copper rings," "coating material and mo

13 boat" to "consumable materials for electrolysis," and a "Leybold

14 Turbo controller" to a "Temperature controller."

15      Overt Act #49:  On August 13, 2008, defendant MASOUMIAN

16 transferred and caused to be transferred approximately $99,953.00

17 from an entity located in Sweden, via Swedbank in Sweden, to

18 Washington Mutual Bank in the United States, account number

19 ending in 6401, a joint account in defendant AVANESSIAN's name.

20      Overt Act #50:  On August 24, 2008, defendant AVANESSIAN

21 sent an e-mail to defendant MASOUMIAN containing the total

22 package list ready for shipment, and stating that the shipment

23 would be in eight or nine boxes.  The list provided by defendant

24 AVANESSIAN to defendant MASOUMIAN included four packs of copper

25 rings and eight packs of consumable materials for electrolysis.

26 Defendant AVANESSIAN also informed defendant MASOUMIAN that after

27 sending the invoice he would prepare the "original Packing slip

28 and Invoice."

Overt Act #51:  On August 27, 2008, defendant AVANESSIAN caused Total Transportation Concepts to prepare an air waybill for nine boxes indicating that the shipment contained "spare parts" and was being sent to AVAC in the U.A.E., and that no Shipper's Export Declaration was required because the commodity value was under $2,500.  Among the items listed on the XVAC invoice submitted to Total Transportation Concepts for this shipment were the following:

| Quantity | Description | Listed Unit Price |
|---|---|---|
| 4 sets | Copper washer and steel flanges | $15.00 |
| 5 sets | Consumable materials for electrolysis | $12.00 |
| 1 | Cooling pump station with controller | $280.00 |

Overt Act #52:  On August 27, 2008, defendant AVANESSIAN, doing business as XVAC, caused the export of Duniway copper gaskets and a Leybold Electronic frequency converter MAG.DRIVE digital with RS-232, among other items, to the U.A.E.

Overt Act #53:  On September 2, 2008, defendant AVANESSIAN sent an e-mail to defendant MASOUMIAN containing the nine wooden-box package list.  The package list contained the unaltered descriptions of the items shipped to defendant MASOUMIAN, including the copper gaskets and a "leybold Turbo controller 40035v0013."

October 24, 2008 Shipment

Overt Act #54:  On August 7, 2008, XVAC sent a purchase order to Oerlikon Leybold Vacuum USA for the following items,

21

with payment to be made by a credit card in the name of defendant AVANESSIAN:

| Quantity | Description | Unit Price |
|---|---|---|
| 1 | 91276-2 D25B(MV/F-3PH)HE200-1.5HP vacuum pump | $3,128.25 |
| 1 | 28674 Gate Valve, DN 160 ISO-F EP, VA 24 V/DC | $4,324.50 |

Overt Act #55:  On August 21, 2008, XVAC sent a purchase order to Pfeiffer Vacuum for the following items, with payment to be made by a credit card in the name of defendant AVANESSIAN:

| Quantity | Description | Unit Price |
|---|---|---|
| 1 | TPG300 Total Pressure System PT G25 293 | $2,342.60 |
| 2 | PK M10 001 A FV 1 Bourdon Gauge, DN10 ISO-KF | $165.60 |
| 1 | PM C01 698DCU 150 Display Controller and Power Supply | $1,067.95 |
| 1 | Felt Oil Reservoir 180 and Up | $40.80 |

Overt Act #56:  On September 10, 2008, defendant MASOUMIAN transferred and caused to be transferred approximately $99,961.58 from an entity in Dubai, U.A.E., via the National Bank of Dubai in the U.A.E., to Washington Mutual Bank in the United States, account number ending in 6401, a joint account in defendant AVANESSIAN's name.

Overt Act #57:  On October 14, 2008, defendant AVANESSIAN sent defendant MASOUMIAN an e-mail attaching a document titled "Air Shipments Items."  The attached document contained an itemized list of the contents of several boxes in two different shipments, one for "Air Shipments Items" and one for "Sea Shipments."  The items listed under the air shipment list

22

1  included a Leybold D25B vacuum pump; a Leybold gate Valve 6" Ddn-
2  160 (vat valve); and a "Titanium Target," among other items.

3      <u>Overt Act #58</u>:  On October 14, 2008, defendant MASOUMIAN
4  forwarded by e-mail the same attached list of items for air and
5  sea shipments to defendant SAIRAFI and wrote that "We should
6  change the words and phrases according to our considerations."

7      <u>Overt Act #59</u>:  On October 16, 2008, defendant AVANESSIAN
8  sent an e-mail to defendant MASOUMIAN informing him that the two
9  shipments would be ready for pick up on October 20 and asking if
10 defendant MASOUMIAN could arrange for pick up of the sea
11 shipment.

12     <u>Overt Act #60</u>:  On October 21, 2008, defendant AVANESSIAN
13 sent an e-mail to defendant MASOUMIAN attaching the packing slip
14 for the air and sea shipments.

15     <u>Overt Act #61</u>:  On October 24, 2008, defendant AVANESSIAN
16 caused Total Transportation Concepts to prepare an air waybill
17 for five boxes indicating that the shipment contained "spare
18 parts" and was being sent to AVAC in the U.A.E., and that no
19 Shipper's Export Declaration was required because the commodity
20 value was under $2,500.  Among the items listed on the XVAC
21 invoice submitted to Total Transportation Concepts for this
22 shipment were the following:

| Quantity | Description | Listed Unit Price |
|----------|-------------|-------------------|
| 1 set | D-25 B Cooling pump | $175.00 |
| 1 set | 6 inch Pneumatic Valve | $44.00 |
| 4 sets | Gauges and Power Supply | $10.00 |
| 8 pack | Filter materials and Grease | $12.00 |

23

Overt Act #62:  On October 24, 2008, defendant AVANESSIAN, doing business as XVAC, caused the export of a Leybold D25-B vacuum pump; a TPG300 Total Pressure System; a FV 1 Bourdon Tube Vacuum Gauge; DCU 150 Display Control Unit; and a Felt Oil Reservoir 180 and Up, among other items, to the U.A.E.

November 4, 2008 Shipment

Overt Act #63:  On October 14, 2008, defendant AVANESSIAN sent defendant MASOUMIAN an e-mail attaching a document titled "Air Shipments Items."  The attached document contained an itemized list of the contents of several boxes in two different shipments, one for "Air Shipments Items" and one for "Sea Shipments."  The items listed under the sea shipment list included "Pfeiffer pump P3 oil" and an "Edwards EXT-250 turbo pump and controller."

Overt Act #64:  On October 27, 2008, defendant AVANESSIAN caused Cargo Speedline Inc. to prepare a bill of lading for seven boxes to be shipped via ocean freight indicating that the shipment contained "auto parts" and was being sent to AVAC in the U.A.E., and that no Shipper's Export Declaration was required. Among the items listed on the XVAC invoice submitted to Cargo Speedline Inc. for this shipment was "lubricating oil" and "Car Head light refurbish system with accessories."

Overt Act #65:  On November 4, 2008, defendant AVANESSIAN doing business as XVAC caused the export of a Pfeiffer P3Oil 200 liter, among other items, to the U.A.E.

Overt Act #66:  On November 5, 2008, defendant AVANESSIAN sent an e-mail to defendant MASOUMIAN attaching the invoice for the ocean shipment.

1    Overt Act #67:  On January 15, 2009, defendant AVANESSIAN
2    sent an e-mail to defendant MASOUMIAN confirming the order and
3    purchase of Edwards Vacuum diffusion pumps, including "One
4    Edwards EXT250M turbo."
5    February 2009 Attempted Shipment
6    Overt Act #68:  On July 10, 2008, defendant SAIRAFI sent an
7    e-mail to defendant MASOUMIAN inquiring for certain vacuum pumps,
8    including a "PP W4100 Roots pump WKP1000A" and a "PP W61000 Roots
9    pump WKP2000A," both manufactured by Pfeiffer Vacuum.
10   Overt Act #69:  On July 10, 2008, defendant MASOUMIAN sent
11   an e-mail to defendant AVANESSIAN with "new orders from Leybold
12   and Pfeiffer" and listed a "PP W4100 Roots pump WKP41000A" and a
13   "PP W61000 Roots pump WKP2000A," both manufactured by Pfeiffer.
14   Overt Act #70:  On July 25, 2008, defendant MASOUMIAN sent
15   an e-mail to defendant AVANESSIAN requesting that defendant
16   AVANESSIAN "ask for the price of following items from Pfeiffer"
17   and listed a "WKP 1000 A  Ordering No.: PP W41 000" and a "WKP
18   2000 A  Ordering No.: PP W61 000."
19   Overt Act #71:  On September 15, 2008, defendant AVANESSIAN
20   forwarded to an unindicted co-conspirator, whose signature block
21   in that e-mail exchange contained an address in Tehran, Iran, a
22   "Price quote from Pfeiffer for Capacitance gauges" that included
23   quotations for various capacitance gauges with part numbers
24   "631CCR 364 with DN 16 ISO-KF."  Defendant AVANESSIAN also wrote
25   in that e-mail that an "attachment is for export limitation rule
26   for Capacitance gauges."
27   Overt Act #72:  On February 11, 2009, defendant AVANESSIAN
28   caused to be delivered to Cargo Speedline Inc. for shipment to

AVAC in the U.A.E., ceramic capacitance gauges, part numbers CCR
363 VCR flanges and CCR 364 flanges; a vacuum roots pump model
OKTA 1000 A, part number PPW41000; and a vacuum roots pump model
OKTA 2000 A, part number PPW61000, each manufactured by Pfeiffer,
among other items.

COUNTS TWO THROUGH FOURTEEN

[50 U.S.C. §§ 1701-1706; 18 U.S.C. § 2; 31 C.F.R. §§ 560.203, 560.204, 560.701]

29.  On or about the dates listed below, in Los Angeles County, within the Central District of California, and elsewhere, defendant AMIRHOSSEIN SAIRAFI did knowingly and willfully violate and cause to be violated the United States trade restrictions with Iran by exporting and attempting to export vacuum pumps and related equipment parts, as described more fully below in Counts Two through Fourteen, from the United States to Iran, via the U.A.E., without first having obtained the required license or authorization from the United States Department of the Treasury, Office of Foreign Asset Control, for such export:

| COUNT | DATE OF EXPORT | PART DESCRIPTION |
|---|---|---|
| TWO | 06/19/06 | Varian diffusion pump model VHS-6 with standard cold cap 120 V, ASA Flange S/N J5266 |
| THREE | 06/19/06 | Leybold D90A rotary vane mechanical pump, hydrocarbon prep, 220v 3 phase S/N 898058 |
| FOUR | 06/19/06 | VAT gate valve model 12040-PA44 ISO 100 S/N 1292 |
| FIVE | 06/19/06 | Five (5) VAT KF-16 AL Valves A/O Model 26324-KA21 single acting NC w/ LM without SV S/N 1635, 1730/1561/1681/2139 |
| SIX | 10/11/06 | Varian diffusion pump model M4 with standard cold cap, 220 V, ASA Flange, S/N:A056 |
| SEVEN | 10/11/06 | Varian diffusion pump model HS-2 with standard cold cap, 220 V, ASA Flange, S/N:L0C10050 |

27

| COUNT | DATE OF EXPORT | PART DESCRIPTION |
|-------|----------------|------------------|
| EIGHT | 10/11/06 | Leybold D16A rotary vane mechanical pump, hydrocarbon prep, 220v, 1 phase |
| NINE | 10/11/06 | Two (2) VAT AL angle valves KF-40, air operated, 26332-KA71, S/N:2137,2148 |
| TEN | 10/11/06 | Three (3) VAT KF-16 AL Valve A/O Model26324-KA21, single acting NC w/ LM without SV, 1986, 160, 168, |
| ELEVEN | 11/08/06 | Varian diffusion pump model VHS-250 with standard cold cap, 220 V, ASA flange |
| TWELVE | 11/08/06 | Leybold D90A rotary vane mechanical pump, hydrocarbon prep. 220v, 3 phase S/N 1288454761E |
| THIRTEEN | 11/08/06 | Varian Diffusion Pump Model VHS-6 with standard cold cap, 220 V, ASA Flange S/N:D044 |
| FOURTEEN | 02/05/07 | Two (2) Varian diffusion pumps model VHS-250 with standard cold cap 220 V, ASA Flange, S/N:A136,T039 |

COUNTS FIFTEEN THROUGH THIRTY-SIX

[50 U.S.C. §§ 1701-1706; 18 U.S.C. § 2; 31 C.F.R. §§ 560.203, 560.204, 560.701]

30. On or about the dates listed below, in Los Angeles County, within the Central District of California, and elsewhere, defendants JIRAIR AVANESSIAN, FARHAD MASOUMIAN, and AMIRHOSSEIN SAIRAFI did knowingly and willfully violate and cause to be violated the United States trade restrictions with Iran by exporting and attempting to export vacuum pumps and related equipment parts, as described more fully below in Counts Fifteen through Thirty-Six, from the United States to Iran, via the U.A.E., without first having obtained the required license or authorization from the United States Department of the Treasury, Office of Foreign Asset Control, for such export:

| COUNT | DATE OF EXPORT | PART DESCRIPTION |
|---|---|---|
| FIFTEEN | 12/06/07 | Pfeiffer PKR 251 Gauge, D 25 ISO-KF, PT R26 000 |
| SIXTEEN | 12/06/07 | Pfeiffer Economy Pumping Station, inlet flange DN 63 ISO-K |
| SEVENTEEN | 12/06/07 | Pfeiffer EVN 116 Gas Dosing Valve with Integrated Shut-off Valve |
| EIGHTEEN | 03/28/08 | Edwards Vacuum Speedivalve with Viton diaphrag SP25K |
| NINETEEN | 03/28/08 | Leybold DIP-8000 Diffusion Pump |
| TWENTY | 05/23/08 | TURBOVAC 361; 160 ISO-K Vacuum Turbo Molecular pumps, Oerlikon Leybold Catalog No. 85762 |
| TWENTY-ONE | 05/23/08 | Duniway TERRA-921 Terranova Cold Cathode gauge controllers |

| COUNT | DATE OF EXPORT | PART DESCRIPTION |
|---|---|---|
| TWENTY-TWO | 05/23/08 | LDS Vacuum ISO63/250-DC-S S/S Double Claw |
| TWENTY-THREE | 05/23/08 | LDS Vacuum ISO 320/500 DC-S SS Double Claw |
| TWENTY-FOUR | 05/23/08 | LDS Vacuum NW 5-Wing-nut Clamp |
| TWENTY-FIVE | 06/20/08 | Two (2) Oerlikon Leybold turbomolecular pumps model MAG W 3200 CT, 320 ISO-F, |
| TWENTY-SIX | 06/20/08 | Edwards turbomolecular pump EXT556 H DN160ISO |
| TWENTY-SEVEN | 07/11/08 | Leybold Screw Vacuum Pump ScrewLine 00060 117008 |
| TWENTY-EIGHT | 08/27/08 | Duniway Copper Gaskets |
| TWENTY-NINE | 08/27/08 | Leybold Mag.Drive digital-line with RS-232 |
| THIRTY | 10/24/08 | Pfeiffer TPG300 Total Pressure System |
| THIRTY-ONE | 10/24/08 | Pfeiffer FV1 Bourdon Tube Vacuum Gauge, DN 10 ISO-KF |
| THIRTY-TWO | 10/24/08 | Pfeiffer DCU 150 Display Control Unit |
| THIRTY-THREE | 10/24/08 | Pfeiffer Felt Oil Reservoir PM 063 265-T |
| THIRTY-FOUR | 10/24/08 | Leybold Gate Valve, DN 160, 0002028674 |
| THIRTY-FIVE | 10/24/08 | Leybold D25B Vacuum Pump, 0001091276-2 |
| THIRTY-SIX | 11/04/08 | Pfeiffer Oil, 200 liters, PK 001110-T |

COUNT THIRTY-SEVEN

[50 U.S.C. §§ 1701-1706; 31 C.F.R. §§ 560.203,

560.204, 560.701]

31.   On or about February 12, 2009, in Los Angeles County, within the Central District of California, and elsewhere, defendants JIRAIR AVANESSIAN, FARHAD MASOUMIAN, and AMIRHOSSEIN SAIRAFI did knowingly and willfully violate the United States trade restrictions with Iran by attempting to export and send from the United States to Iran, via the U.A.E., ceramic capacitance gauges, part numbers CCR 363 VCR flanges and CCR 364 flanges, manufactured by Pfeiffer Vacuum; and a Vacuum Air Blower Model OKTA 1000 A, part number PPW41000, manufactured by Pfeiffer; and a vacuum roots pump model OKTA 2000 A, manufactured by Pfeiffer, among other items, without first having obtained the required license or authorization from the United States Department of the Treasury, Office of Foreign Assets Control, for such export.

31

COUNTS THIRTY-EIGHT THROUGH FORTY-ONE

[18 U.S.C. § 1956(a)(2)(A)]

32.  On or about the dates listed below, in Los Angeles County, within the Central District of California, and elsewhere, defendant AMIRHOSSEIN SAIRAFI transported, transmitted, transferred, and attempted to transport, transmit, and transfer, a monetary instrument and fund to a place in the United States from and through a place, in the country identified below, outside the United States, with the intent to promote the carrying on of a specified unlawful activity, namely, violating the International Emergency Economic Powers Act, in violation of 50 U.S.C. §§ 1701-1706, 31 C.F.R. §§ 560.203, 560.204, 560.701:

| COUNT | DATE | WIRE NO. | COUNTRY | BANK ACCOUNT IN THE UNITED STATES AND AMOUNT |
|-------|------|----------|---------|---------------------------------------------|
| THIRTY-EIGHT | 6/15/06 | 060615-076176 | U.A.E. | Wells Fargo Bank N.A. account number ending in 4416 in the amount of $6,258 |
| THIRTY-NINE | 09/29/06 | 060929-002070 | U.A.E. | Wells Fargo Bank N.A. account number ending in 4416 in the amount of $5,965 |
| FORTY | 11/6/06 | 061106-001515 | U.A.E. | Wells Fargo Bank N.A. account number ending in 4416 in the amount of $6,045 |
| FORTY-ONE | 01/25/07 | 070125-050403 | U.A.E. | Wells Fargo Bank N.A. account number ending in 4416 in the amount of $3,610 |

COUNT FORTY-TWO

[18 U.S.C. § 1956(h), (a)(2)(A)]

A.   THE OBJECT OF THE CONSPIRACY

33.   Beginning on an unknown date and continuing to in or about September 2008, in Los Angeles County, within the Central District of California, and elsewhere, defendants JIRAIR AVANESSIAN ("defendant AVANESSIAN") and FARHAD MASOUMIAN ("defendant MASOUMIAN"), together with others known and unknown to the Grand Jury, knowingly combined, conspired, and agreed, with the intent to promote the carrying on of specified unlawful activity, namely, violating the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701-1706, 31 C.F.R. §§ 560.203, 560.204, 560.701, to transport, transmit, and transfer funds to a place in the United States from or through a place outside the United States, all in violation of 18 U.S.C. § 1956(a)(2)(A).

B.   THE MANNER AND MEANS OF THE CONSPIRACY

34.   The object of the conspiracy was to be accomplished in substance by defendant MASOUMIAN wiring money from Iran via other countries to defendant AVANESSIAN in the United States.

C.   OVERT ACTS

35.   On or about the dates listed below, in furtherance of the conspiracy and to carry out the object of the conspiracy, defendants AVANESSIAN and MASOUMIAN, and other co-conspirators known and unknown to the Grand Jury, committed the following overt acts, among others, within the Central District of California and elsewhere:

Overt Act #1:   On October 9, 2007, defendant MASOUMIAN transferred and caused to be transferred approximately $39,996.66

from an entity in Dubai, U.A.E., via the National Bank of Dubai in the U.A.E., to Washington Mutual Bank in the United States, account number ending in 6401, a joint account in defendant AVANESSIAN's name.

Overt Act #2:  On March 12, 2008, defendant MASOUMIAN transferred and caused to be transferred approximately $74,981.58 from an entity in Dubai, U.A.E., via the National Bank of Dubai in the U.A.E., to Washington Mutual Bank in the United States, account number ending in 6401, a joint account in defendant AVANESSIAN's name.

Overt Act #3:  On April 23, 2008, defendant MASOUMIAN sent an e-mail to defendant AVANESSIAN informing him that he had sent "$110,000 US$" to defendant AVANESSIAN and that he was waiting for the packing slip with detailed packing list, in order "to do the custom duties."

Overt Act #4:  On April 30, 2008, defendant MASOUMIAN transferred and caused to be transferred approximately $109,975.00 from an entity located in Sweden, via Swedbank in Sweden, to Washington Mutual Bank in the United States, account number ending in 6401, a joint account in defendant AVANESSIAN's name.

Overt Act #5:  On May 16, 2008, defendant MASOUMIAN transferred and caused to be transferred approximately $89,944.00 from an entity located in Sweden, via Swedbank in Sweden, to Washington Mutual Bank in the United States, account number ending in 6401, a joint account in defendant AVANESSIAN's name.

Overt Act #6:  On August 13, 2008, defendant MASOUMIAN transferred and caused to be transferred approximately $99,953.00

from an entity located in Sweden, via Swedbank in Sweden, to Washington Mutual Bank in the United States account number ending in 6401, a joint account in defendant AVANESSIAN's name.

Overt Act #7:  On September 10, 2008, defendant MASOUMIAN transferred and caused to be transferred approximately $99,961.58 from an entity in Dubai, U.A.E., via the National Bank of Dubai in the U.A.E., to Washington Mutual Bank in the United States, account number ending in 6401, a joint account in defendant AVANESSIAN's name.

COUNTS FORTY-THREE THROUGH FORTY-EIGHT

[18 U.S.C. § 1956(a)(2)(A)]

36.   On or about the dates listed below, in Los Angeles County, within the Central District of California, and elsewhere, defendants JIRAIR AVANESSIAN and FARHAD MASOUMIAN transported, transmitted, and transferred, and attempted to transport, transmit, and transfer, a monetary instrument and fund to a place in the United States from and through a place, in the country identified below, outside the United States, with the intent to promote the carrying on of a specified unlawful activity, namely, violating the International Emergency Economic Powers Act, in violation of 50 U.S.C. §§ 1701-1706, 31 C.F.R. §§ 560.203, 560.204, 560.701:

| COUNT | DATE | WIRE NO. | COUNTRY | BANK ACCOUNT IN THE UNITED STATES AND AMOUNT |
|---|---|---|---|---|
| FORTY-THREE | 10/09/07 | 071009-00007476 | U.A.E. | Washington Mutual Bank account number ending in 6401 in the amount of $39,996.66 |
| FORTY-FOUR | 03/12/08 | 080312-00003424 | U.A.E. | Washington Mutual Bank account number ending in 6401 in the amount of $74,981.58 |
| FORTY-FIVE | 04/30/08 | 080430-00001775 | SWEDEN | Washington Mutual Bank account number ending in 6401 in the amount of $109,975.00 |

| COUNT | DATE | WIRE NO. | COUNTRY | BANK ACCOUNT IN THE UNITED STATES AND AMOUNT |
|-------|------|----------|---------|----------------------------------------------|
| FORTY-SIX | 05/16/08 | 080516-00002674 | SWEDEN | Washington Mutual Bank account number ending in 6401 in the amount of $89,944.00 |
| FORTY-SEVEN | 08/13/08 | 080813-00000848 | SWEDEN | Washington Mutual Bank account number ending in 6401 in the amount of $99,953.00 |
| FORTY-EIGHT | 09/10/08 | 080910-00003423 | U.A.E. | Washington Mutual Bank account number ending in 6401 in the amount of $99,961.58 |

COUNTS FORTY-NINE THROUGH FIFTY-FOUR

[18 U.S.C. §§ 554, 2]

37.  On or about the dates listed below, in Los Angeles County, within the Central District of California, and elsewhere, defendant JIRAIR AVANESSIAN did fraudulently and knowingly export and send, cause to be exported and sent, and attempt to export and send from the United States merchandise, articles, and objects contrary to a law and regulation of the United States, namely, vacuum pump equipment, as described more fully below in Counts Forty-Nine through Fifty-Four, without having first filed a Shipper's Export Declaration for goods being exported where the value of a single commodity was over $2,500, in violation of Title 15, Code of Federal Regulations, Part 30:

| COUNT | DATE OF EXPORT | PART DESCRIPTION |
| --- | --- | --- |
| FORTY-NINE | 12/06/07 | Pfeiffer Economy Pumping Station, inlet flange DN 63 ISO-K |
| FIFTY | 03/28/08 | Leybold DIP 8000 Diffusion Pump |
| FIFTY-ONE | 07/11/08 | Leybold Screw Vacuum Pump ScrewLine 00060 117008 |
| FIFTY-TWO | 08/27/08 | Leybold Mag.Drive digital-Line with RS-232 |
| FIFTY-THREE | 10/24/08 | Leybold Gate Valve, DN 160, 0002028674 |
| FIFTY-FOUR | 10/24/08 | Leybold D25B Vacuum Pump, 0001091276-2 |

## COUNT FIFTY-FIVE

[18 U.S.C. § 554]

38.   On or about February 12, 2009, in Los Angeles County, within the Central District of California, and elsewhere, defendant JIRAIR AVANESSIAN did fraudulently and knowingly attempt to export and send from the United States merchandise, articles, and objects contrary to a law and regulation of the United States, namely, vacuum pump equipment, specifically Pfeiffer Vacuum Air Blower Model OKTA 1000 A, part number PPW41000, without having first filed a Shipper's Export Declaration for goods being exported where the value of a single commodity was over $2,500, in violation of Title 15, Code of Federal Regulations, Part 30.

FORFEITURE

[18 U.S.C. § 982(a)(1)]

39.   Pursuant to Title 18, United States Code, Section 982(a)(1), defendant AMIRHOSSEIN SAIRAFI, if convicted of one or more of the offenses charged in Counts Thirty-Eight through Forty-One of this First Superseding Indictment, and defendants JIRAIR AVANESSIAN and FARHAD MASOUMIAN, if convicted of one or more of the offenses charged in Counts Forty-Two through Forty-Eight of this First Superseding Indictment, shall forfeit to the United States the following property:

a.   All right, title, and interest in any and all property involved in the offense in violation of 18 U.S.C. §§ 1956(a) and 1956(h) described in Counts Thirty-Eight through Forty-Eight, and all property traceable to such property, including the following:

i.   all money or other property that was the subject of each transaction, transportation, transmission or transfer in violation of Section 1956(a) and 1956(h);

ii.   all commissions, fees, and other property constituting proceeds obtained, directly or indirectly, as a result of those violations; and

iii. all property used in any manner or part to commit or to facilitate the commission of those violations.

b.   A sum of money equal to the total value of the property described in paragraph 118(a).  If more than one

defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount involved in such offense.

40.    Pursuant to Title 21, United States Code, Section 853(p), and Title 18, United States Code, Section 982(b), defendants AMIRHOSSEIN SAIRAFI, JIRAIR AVANESSIAN, or FARHAD MASOUMIAN, if so convicted, shall forfeit substitute property, up to the total value of the total amount described in paragraph 118(a), if, by any act or omission of a defendant, said property, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE

[18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c),

and 21 U.S.C. § 853]

41.   Pursuant to Title 28, United States Code, Section 2461(c), Title 18, United States Code, Section 981(a)(1)(C), and Title 21, United States Code, Section 853, each defendant, if convicted of one or more of the offenses charged in Counts One or Fifteen through Thirty-Seven of this First Superseding Indictment, and defendant AMIRHOSSEIN SAIRAFI, if convicted of one or more of the offenses charged in Counts Two through Fourteen, and defendant JIRAIR AVANESSIAN, if convicted of one or more of the offenses charged in Counts Forty-Nine through Fifty-Five, shall forfeit to the United States the following property:

a.   All right, title and interest in any and all property, real or personal, which constitutes or is derived from any proceeds obtained, directly or indirectly, as a result of the offenses charged in Counts One through Fifty-Five; and

b.   A sum of money equal to the total value of the property described in paragraph 120(a).

42.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), defendants JIRAIR AVANESSIAN, FARHAD MASOUMIAN, or AMIRHOSSEIN SAIRAFI, if so convicted, shall forfeit substitute property, up to the total value of the total amount described in paragraph 120(a), if, by any act or omission of a defendant, said property, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to,

42

1   or deposited with, a third party; (c) has been placed beyond the

2   jurisdiction of the court; (d) has been substantially diminished

3   in value; or (e) has been commingled with other property that

4   cannot be divided without difficulty.

5

6                                   A TRUE BILL

7

8                                   _____ /s/ _____
                                    Foreperson

9

10  GEORGE S. CARDONA
    Acting United States Attorney

11  *Christine C. Ewell*

12

13  CHRISTINE C. EWELL
    Assistant United States Attorney
    Chief, Criminal Division

14

15  PATRICK R. FITZGERALD
    Assistant United States Attorney
16  Acting Chief, National Security Section

17  ROZELLA A. OLIVER
    Assistant United States Attorney
18  National Security Section

19  ANTHONY J. LEWIS
    Assistant United States Attorney
20  National Security Section

21

22

23

24

25

26

27

28

                                43